McCooe, J. (dissenting).
I respectfully dissent and accept the tenant’s testimony in its entirety. Nevertheless, I disagree that the tenant has sustained her burden of proof that the cats were displayed “openly and notoriously” and that the landlords, past or present, had knowledge that she was harboring cats. I disagree that if the independent contractor or its employees had knowledge that it would be imputed to the landlord. I agree *56 that if the landlord’s agents or employees had knowledge it would be imputed to the landlord.
Administrative Code of City of New York § 27-2009.1 (b) provides in relevant part:
“Where a tenant in a multiple dwelling openly and notoriously for a period of three months or more following taking possession of a unit, harbors or has harbored a household pet or pets, the harboring of which is not prohibited by the multiple dwelling law, the housing maintenance or the health codes of the city of New York or any other applicable law, and the owner or his or her agent has knowledge of this fact, and such owner fails within this three month period to commence a summary proceeding or action to enforce a lease provision prohibiting the keeping of such household pets, such lease provision shall be deemed waived” (emphasis supplied).
The first point raised by the majority relates to the landlord’s posttrial motion where the housing court commendably reversed itself. This issue was never raised or considered, directly or indirectly, in this court or the court below. Therefore it was not preserved for appellate review (Bingham v New York City Tr. Auth., 99 NY2d 355, 359 [2003]). Without reaching the merits, in Barnes v Oceanus Nav. Corp., Ltd. (21 AD3d 975, 977 [2d Dept 2005]) cited by the majority, the court affirmed the grant of the late motion. Furthermore this landlord had filed a timely notice of appeal.
The second point raised in the majority opinion is that the housing court gave “little explanation for its change of heart on the waiver issue.” I disagree. The Judge gave two reasons for changing his decision. The first was that he had incorrectly stated that after the tenant testified the “petitioner had the burden to rebut respondent’s claim by calling the prior management or its appropriate agents as witnesses.” Waiver is an affirmative defense. Furthermore there was no evidence to rebut. The second reason given was that subsequent to his first decision, the Appellate Term decided Gidina Partners LLC v Marco (11 Misc 3d 21 [App Term, 1st Dept 2005]). The housing court judge, correctly citing Gidina, stated that “[t]he Court must follow the law as given by the higher Courts.”
These two points raised by the majority beg the issue before us. The issue is whether on this record the tenant has sustained her burden of proving knowledge by the landlord’s agents or *57 employees of the open and notorious harboring of the cats in the apartment by the tenant.
The tenant testified that the cats usually hide if they do not know the person entering the apartment. The cats eat from plastic food bowls which are washed and placed on top of the refrigerator after a feeding. There is also a litter box in the bathroom next to the toilet. If repairs were being done in the apartment, this litter box would be placed in the bathtub which had a nontransparent shower curtain.
Regarding the waiver defense, tenant testified that in August 2000 the former managing agent and superintendent entered her apartment because part of the bathroom ceiling fell. At that time the cats were in the apartment, the food bowl was on top of the refrigerator and the litter box was in the bathroom. In October 2003, Dennis Tsomas, a contractor hired by the landlord, entered the apartment on several occasions with three workers to replace the circuit breakers and a broken pipe. The tenant did not know where the cats were in the apartment on these occasions but the litter box was in the bathroom and the food bowls were either put away or on the refrigerator. She was asked if any employee or contractor saw the cats and she said “I don’t know.”
Tenant’s exhibit C in evidence indicates that Dennis Tsomas was the principal of All Town Construction, license No. 1023795 with a Queens address. The tenant testified that the written procedure in exhibit C was for the tenants to call him directly “[flor scheduling minor repairs.” The lease required the tenant to do her own painting.
On cross-examination, tenant admitted that the cats usually hide if they do not know someone and that she did not know if the manager and superintendent saw the cats or the litter box when they entered the apartment in August 2000 or if Mr. Tsomas saw the cats when he worked in the apartment on two occasions in October 2003. On redirect, tenant stated that the superintendent had been in her bathroom for half an hour after the ceiling collapsed in August 2000. This visit in 2000 is the only visit by the landlord or agent to the apartment contrary to the “regularly” term employed by the majority.
Matter of Robinson v City of New York (152 Misc 2d 1007, 1009 [Sup Ct, NY County 1991, Schlesinger, J.]) relied upon by the majority and the housing court’s first decision is factually distinguishable since that tenant testified that her dog “was seen, petted and commented upon by various employees” of the *58 landlord. This is a third reason why the housing court correctly reversed itself.
Ken Wollenberg, a friend of the tenant, testified that his wife was a former neighbor of tenant and that he would feed the cats when the tenant was out of town. This occurred in August 2000 and once “three years before that.” When he entered the apartment on other occasions he did not see the cats because they were very shy and usually hide.
Based upon the tenant’s testimony, she has failed to establish that the presence of the cats “was so open and notorious” as to establish “actual knowledge” that the landlord, its agents or employees knew that the tenant harbored cats (Seward Park Hous. Corp. v Cohen, 287 AD2d 157, 165 [2001]). The tenant’s evidence in Seward Park and Matter of Robinson was that the landlord’s employees actually interacted with the dogs which factually distinguishes this case.
I respectfully disagree with the majority on three legal issues. The first is the shifting of the burden of proof previously referred to. The second is characterizing Tsomas as an agent of the landlord. The third is the failure to apply the “actual knowledge” requirement to the landlord’s employees as stated in Seward Park. Furthermore there is not even constructive knowledge since any claimed evidence of knowledge is purely speculative. Accepting the tenant’s testimony that the former landlord was in the apartment in 2000 for 30 minutes looking at the ceiling damage, there is no evidence that he or his agents saw the cats or their accouterments.
Tsomas is readily distinguishable from the security personnel in Seward Park characterized by that court as “employees of its long term independent contractor as statutory agents for acquiring information.” (Id. at 166.) Tsomas’ employees or any unidentified contractor were not employed at the premises on a full-time basis but responded only when called to make repairs. Tsomas was not “long term” since he first made repairs in 2003 to this apartment and was not supervised by the landlord. In any event, he was only there a total of three days.
Administrative Code § 27-2009.1 (b) specifically refers to knowledge acquired by “the owner or his or her agent.” The persons performing repairs in the apartment were not agents, servants or employees of the landlord but independent contractors hired to perform a specified task on a short term basis and had no duty to report the presence of cats on the premises even if they saw them.
*59 The trial court’s determination that the landlord did not waive its right to enforce the no pet provision of the governing lease agreement represents a fair interpretation of the evidence and should not be disturbed (318 E. 93 v Ward, 276 AD2d 277 [1st Dept 2000]). The tenant offered scant evidence on the “open and notorious” element of the statutory waiver defense (Administrative Code of City of NY § 27-2009.1 [b]). The tenant testified that her cats never ventured outside the apartment and usually hid when strangers entered the apartment. The tenant did not know if landlord’s employees or its agents ever saw the cats’ litter box or the bowls in her apartment during the 30 minute stay in the apartment in 2000 and she failed to show that their presence was “otherwise detectible” (Gidina Partners LLC v Marco, 11 Misc 3d 21 [App Term, 1st Dept 2005]). The tenant failed to meet her burden of proof (90th Realty Co. v Scolnick, NYLJ Apr. 3, 1995, at 28, col 3 [App Term, 1st Dept]) that the landlord had knowledge that the tenant harbored cats for a period of three months.
The concurring opinion does not advance any new legal arguments. Nevertheless it should be addressed.
With all due respect to my colleague and for the reasons previously given, I disagree with the concurring opinion on the applicable law relating to principal-agent, independent contractor and burden of proof. Furthermore the cases relied upon involve a physical interaction, such as petting, between the agent or employee of the landlord and the animal.
The concurring opinion states that there is “no temporal litmus test before an independent contractor becomes an agent for another.” The passage of time does not transform an independent contractor into an agent. The words “long term” employed by the dissent refer to the language used by the Appellate Division in Seward Park (Seward Park, 287 AD2d at 166). In any event, Tsomas only responded when called and was not on the premises 24 hours a day, 7 days a week like the security guards in Seward Park. It is undisputed that he was only in the apartment a total of three days in October 2003.
The obvious question is why the people who are claimed to be agents of the landlord were not called as witnesses by the tenant rather than speculate as to their testimony. The only evidence of knowledge of the presence of the cats is that of a husband of a former neighbor and he is not an agent of the landlord. The “openly and notoriously” element is completely absent. Factually, it should be clear that the visit by the super *60 intendent Mr. Garcia in November 2004 was the event that triggered this proceeding.
The Administrative Code requires the tenant to. prove that a pet was harbored “openly and notoriously” and that “the owner or . . . agent . . . has knowledge of this fact.”* (Administrative Code § 27-2009 [b].)The only witnesses who testified that they even saw the cats were the tenant and the former neighbor’s husband. The balance of the tenant’s case is speculative and mischaracterizes independent contractors and neighbors as agents of the landlord. The tenant has not sustained her burden of proof.
Courts are bound by all of the terms of the Administrative Code and cannot judicially nullify the terms “openly and notoriously,” “knowledge” and “agent” to reach a desired result even if it causes “frustration” and a perceived “manifest injustice.” The role of the court is to interpret and not legislate. The City Council is the proper forum to address any claimed “injustice” caused by the Administrative Code.
The judgment for the landlord should be affirmed.
Davis, J., and McKeon, EJ., concur, McKeon, EJ., in a separate opinion; McCooe, J., dissents in a separate opinion.

 The failure to include independent contractors is presumed to be intentional (McKinney’s Cons Laws of NY, Book 1, Statutes § 74).